**William J. USERY, Jr., Secretary of Labor, Plaintiff-Appellee, Cross-Appellant,**

v.

**DISTRICT 22, UNITED MINE WORKERS OF AMERICA, Defendant-Appellant, Cross-Appellee,**

**and**

**International Union, United Mine Workers of America, Intervenor-Appellant, Cross-Appellee.**

**Nos. 75–1792 to 75–1794.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 20, 1976.

Decided Nov. 1, 1976.

A. Wally Sandack, Salt Lake City, Utah, for appellant District 22, United Mine Workers of America.

Daniel B. Edelman, Washington, D. C. (Harrison Combs and Joseph A. Yablonski, Washington, D. C., Ralph R. Tate, Jr., Salt Lake City, Utah, on the brief), for appellant International Union, United Mine Workers of America.

Paul Blankenstein, Civ. Div., Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Ramon M. Child, U. S. Atty., Salt Lake City, Utah, and William Kanter, Civ. Div., Dept. of Justice, Washington, D. C., on the brief), for appellee Secretary of Labor.

Before HILL, McWILLIAMS and BARRETT, Circuit Judges.

HILL, Circuit Judge.

This action was brought by the Secretary of Labor under Title IV of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481 *et seq.*, against District 22 of the United Mine Workers of America (UMWA). The International Union intervened as a defendant. The Secretary sought a judgment declaring void the December 11, 1973, District 22 election of officers and ordering new elections under the Secretary's supervision for all offices filled in that election. The district court ordered a new election for one of the seven offices challenged. The Union appeals the judgment as to the new election ordered, and the Secretary appeals from the court's failure to order new elections for the other six offices.

The action was prompted by the complaint of union member Frank Roybal who

sought to be a candidate for International Board Member[1] from District 22. Royal was nominated for the office by three local unions. He was denied a place on the ballot because of the District's requirement that a candidate for district office be nominated by five local unions. Article XI, Section 9 of the District constitution provides:

No person shall . . . be a candidate for President, Secretary-Treasurer or International Board Member who has not been nominated by five or more Local Unions. In the case of candidates for the position of District Board Member or National Policy Committee Members, nominations by three Local Unions from their respective Sub-Districts shall be sufficient.

The position of International board member was won by Frank Stevenson, the incumbent president and secretary-treasurer of District 22. He ran unopposed after receiving nominations from 11 local unions.

Royal exhausted his internal union remedies pursuant to 29 U.S.C. § 482 before filing his complaint with the Secretary. His complaint to the Union was directed specifically to his candidacy and the requirement of nominations from five local unions. The Secretary's action, however, sought new elections for all three district offices subject to the five nomination requirement and for the four sub-district offices subject to the three nomination requirement. The Secretary alleged the nomination procedures violated 29 U.S.C. § 481(e) which provides in pertinent part:

[A] reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be

eligible to be a candidate and to hold office (subject to . . . reasonable qualifications uniformly imposed) . . . .

Specifically, the Secretary contended the Union's requirements did not provide a "reasonable opportunity" for union members to nominate candidates of their choice or to be candidates for office.

District 22 of the UMWA consists of 16 local unions located in Wyoming, Utah, and Arizona. The four locals in Wyoming compose Sub-District 1. The remaining 12 locals compose Sub-District 2. Thus, to be a candidate for district office in the 1973 election required nominations from five of the 16 local unions. Candidacy in Sub-District 1 required nominations from three of four locals; in Sub-District 2 it required nominations from three of 12 locals. A local could nominate only one candidate for each office.

The local unions within District 22 vary greatly in size—the largest having 731 eligible voters in 1973, the smallest having only 29. It was possible for a candidate to be nominated by the five smallest locals representing approximately five percent of total district membership, while another candidate could obtain nominations from the four largest locals representing 58 percent of the membership and not qualify for a place on the ballot. In this election the three locals nominating Royal represented 38 percent of voting membership and the eleven nominating Stevenson represented 48 percent. Union records show that other members were denied the opportunity to be candidates for various offices,[2] but only Royal exhausted internal union remedies.

---

1. The International Executive Board is the governing body of the International Union.

2. For other offices the nominations were as follows:

For President

| | |
|---|---|
| Brownfield | 11 nominations |
| Alger | 3 nominations |

For Secretary-Treasurer

| | |
|---|---|
| Dalpaiz | 5 nominations |
| Smith | 9 nominations |

For Sub-District 1 National Policy Committeeman

| | |
|---|---|
| Thornick | 3 nominations |

For Sub-District 1 Board Member

| | |
|---|---|
| Thornick | 3 nominations |

For Sub-District 2 National Policy Committeeman

| | |
|---|---|
| Colisimo | 9 nominations |
| Samples | 1 nomination |

For Sub-District 2 Board Member

| | |
|---|---|
| Crissman | 9 nominations |
| Stokes | 2 nominations |

The nominations of two locals were not counted because they were received after the

The history of this nominating procedure demonstrates a tendency toward one-candidate elections. Since records were first kept in 1957, the average number of candidates for each office in District 22 has been 1.75. Since 1957 no election for International board member has been contested. Since 1965 only two of six district-wide offices have had contested elections. In the 1973 election only one of seven offices had opposing candidates. Over the years the requirements for nomination have become more stringent as the number of locals has decreased from 27 in 1962 to 16 in 1973.

Based on this evidence the district court held the Union's requirement of nominations by five local unions did not provide a "reasonable opportunity" for nomination of candidates for union office. The court noted: "A candidate seeking the nominations from five locals might well be put to the cost of traveling in three states with no assurance of ever being nominated." The court found an undetermined number of persons may have been discouraged from running for office because of the five nomination barrier. However, a new election was ordered only for the office sought by Roybal. The court's opinion did not discuss the Secretary's request for new elections for the district offices of president and secretary-treasurer. The court held the Secretary could not challenge the elections for sub-district offices requiring three nominations because no union member had exhausted union remedies concerning that requirement. A rerun election for International board member was held under the Secretary's supervision in January 1976 and Roybal won.

The first question is whether the district court erred in finding the five nomination

requirement violated 29 U.S.C. § 481(e) and in ordering a new election for International board member. The Union contends the winner of the first election should be reinstated. The parties agree there is no authority directly in point. No previous case has voided a union election for failing to provide a "reasonable opportunity" for the nomination of candidates. The district court relied on cases determining the reasonableness of qualifications for office under § 481(e) and on political election cases. The Union offers little argument that its rule is reasonable; its brief consists primarily of arguments distinguishing the authority relied upon by the district court.

■ The Union points out that, contrary to the "qualification" cases, this rule does not categorically exclude a large percentage of union members from running for office. E. g., Wirtz v. Hotel, Motel & Club Employees, Local 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (eligibility for major office required previous holding of elective office—93% of members disqualified); Wirtz v. Local 153, Glass Bottle Blowers Association, 405 F.2d 176 (3d Cir. 1968) (eligibility for office required attendance of 75% of meetings for previous two years— 97% disqualified). The Union contends its rule contains no similar vice because it disqualifies no one; it merely requires a preliminary showing of electoral support to earn a place on the ballot. We believe a preliminary support rule is equally egregious when the showing required is excessive. Such a rule may exclude an undetermined number of otherwise qualified candidates for reasons unrelated to their ability to fulfill the duties of the office.

■ That preliminary support requirements may deny a reasonable opportunity

filing deadline. The Sixth Circuit held an identical rule for disqualifying late nominations was invalid. Hodgson v. District 6, UMWA, 474 F.2d 940 (6th Cir. 1973). Had these nominations been counted, Roybal would have received a fourth nomination for International Board Member, Stokes would have received a third

nomination for Sub-District 2 Board Member, and John Drozivich would have been the third person to receive a nomination for Secretary-Treasurer. The provision for disqualifying late nominations is not a question here and we express no opinion concerning its validity or effect on the 1973 election in District 22.

to be a candidate is illustrated by *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), and *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Those cases involved constitutional challenges to state laws requiring preliminary support showings by candidates seeking to appear on political election ballots. The Union argues they are inapt here because the constitutional standards are stricter than the statutory rule of the LMRDA. We believe the district court correctly determined that these cases provide "an inexact but helpful analogy."

The Supreme Court noted in *Wirtz v. Local 153, GBBA*, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), that the purpose of Title IV of the LMRDA is to insure free and democratic elections. In *Wirtz v. Hotel, Motel & Club Employees Union, Local 6, supra* 391 U.S. at 504, 88 S.Ct. at 1750, the Court stated, "Congress' model of democratic elections was political elections in this country . . . ." The "reasonable opportunity" standard of 29 U.S.C. § 481(e) is not greatly different from the standard applied in *Williams* and *Storer* where the Court indicated "reasonable requirements for ballot position" would be acceptable. 415 U.S. at 719, 94 S.Ct. 1274; 393 U.S. at 32, 89 S.Ct. 5. *Storer* recognizes that the reasonableness of a preliminary support requirement is a "matter of degree" and requires "hard judgments" on the facts of each case to define acceptable limits. 415 U.S. at 730, 94 S.Ct. 1274.

■ The Union attempts to make the inexact nature of the reasonableness stan-

dard a defense to the Secretary's action. It argues that it constitutes undue interference in internal union affairs to void the election at this point because neither the statute nor the Secretary's regulations[3] plainly stated its nomination requirements violated the LMRDA and because the Secretary refused to render an advisory opinion when the Union requested it after Roybal's complaint. We know of no legal principle under which this argument would constitute a defense to a proved violation of the Act.

■ By our decision we are not attempting to interfere in union affairs or to prescribe precise procedures for the nomination of union officers. We merely hold that the requirement of nominations by five locals before a member may be recognized as a candidate does not provide a "reasonable opportunity" for nomination. The requirement in theory could exclude from the ballot a candidate supported by a majority of the members. In practice it has excluded the choice of a substantial percentage of the members. It has resulted in uncontested elections and has excluded an undetermined number of potential candidates because of the burdensome expense of seeking nominations from locals in three states without a reasonable likelihood of success. Such a barrier to candidacy is inconsistent with the intention of Congress in enacting the LMRDA to foster free and democratic union elections. We also agree with the district court's holding that in the election for International board member the violation of § 481(e) "may have affected the

---

**3.** The Secretary has promulgated no regulations directly related to the definition of a "reasonable opportunity" to nominate candidates. He has issued the following regulations in 29 C.F.R. § 452.36(b) (first published in 1974) concerning the reasonableness of qualifications for office which have some relevance here.

Some factors to be considered, therefore, in assessing the reasonableness of a qualification for union office are:

1. The relationship of the qualification to the legitimate needs and interests of the union;

2. The relationship of the qualification to the demands of union office;

3. The impact of the qualification, in the light of the Congressional purpose of fostering the broadest possible participation in union affairs;

4. A comparison of the particular qualification with the requirements for holding office generally prescribed by other labor organizations; and

5. The degree of difficulty in meeting a qualification by union members.

The Union's preliminary support requirement does not bear up well in a comparison with any of the five factors.

outcome." The Union does not question this finding on appeal.

■■■ The Secretary appeals from the district court's failure to order new elections for the District 22 offices of president and secretary-treasurer which also were affected by the Union's requirement of nominations from five locals. We hold the district court erred in denying this relief.

Once the Secretary's authority has been properly invoked by a complaining union member, his action is not narrowly limited to the specifics of the member's complaint to the union. *Hodgson v. Local 6799, United Steelworkers*, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). As the Supreme Court said in *Wirtz v. Local 125, Laborers' International Union*, 389 U.S. 477, 483, 88 S.Ct. 639, 642, 19 L.Ed.2d 716 (1968), "The Act was not designed merely to protect the right of a union member to run for a particular union office in a particular election." The Secretary may include in his complaint any violation he has discovered "which the union had a fair opportunity to consider and redress in connection with a member's initial complaint." *Wirtz v. Local 125, Laborers' International Union, supra* at 484, 88 S.Ct. at 643. We believe Roybal's complaint that the five nomination requirement was invalid as to him and his candidacy gave the Union fair notice it also was invalid as it applied to other offices subject to the same provision. His complaint gave the Union an opportunity to make its own decision in keeping with the LMRDA policy of avoiding undue interference in internal union affairs.

The Union defends the district court's failure to order new elections for president and secretary-treasurer on the grounds the court had equitable discretion to deny such relief. This view is squarely contradicted by the terms of the statute. The Supreme Court has emphasized the mandatory language of 29 U.S.C. § 482(c):

[O]nce the Secretary establishes in court that a violation of § 401 [29 U.S.C. § 481] may have affected the outcome of the challenged election, "the court *shall* declare the election . . . to be void and direct the conduct of a new election under supervision of the Secretary . . . ."

*Wirtz v. Local 153, GBBA*, 389 U.S. 463, 474, 88 S.Ct. 643, 649, 19 L.Ed.2d 705 (1968).

The Union does not contend the violation did not affect the outcome of the election.[4] We must hold the district court erred in not ordering new elections for president and secretary-treasurer of District 22.

■■■ The considerations stated above are determinative of whether the district court erred in holding it could not consider the validity of the Union's requirement of nominations from three locals before recognizing a member's candidacy for sub-district office. The question is whether the complaint filed by Roybal gave the Union notice sufficient to allow a "fair opportunity to consider and redress" the alleged violation. *Wirtz v. Local 125, Laborers' International Union, supra* 389 U.S. at 484, 88 S.Ct. at 643. We believe it did. The sub-district requirement was in the same section of the constitution. Indeed, it was the sentence following the five nomination requirement for district offices. When the Union received the complaint about the five nomination requirement, it had reason to know that the three nomination requirement also was of doubtful validity, especially as it applied to Sub-District 1 where there were only four local unions. The notice given by Roybal's complaint was at least sufficient to "impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question." *Hodgson v. Local 6799, United Steelworkers, supra* 403 U.S. at 341, 91 S.Ct. at 1846. The Union has not attempted to show that it met this burden. It relies solely on its argument that the

---

4. Proof of a violation establishes a prima facie case that the violation "may have affected the outcome." *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). There were known willing candidates who were affected by the rule in the case of both offices.

court had equitable discretion to deny an order of new elections, which we have held is not well-founded. We hold the district court erred in not ordering a new election for the sub-district office of district board member. The other sub-district office, national policy committeeman, has been abolished and the action is moot as far as that election is concerned.

In Sub-District 2 it was possible for a candidate to be nominated by the three smallest local unions representing only four percent of voting membership. A candidate would fail to qualify for the ballot if nominated by the two largest locals representing 48 percent of the members. Union member Ray Stokes was excluded from the ballot for district board member even though the two locals nominating him represented slightly over 30 percent of the members of Sub-District 2. Stokes filed a complaint with the Union but did not pursue it.

In Sub-District 1 the requirement of three nominations supplanted the general election. It was impossible for more than one candidate to earn a place on the ballot. This is clearly a case where "it is impossible to know that the election would not have attracted many more candidates" but for the constitutional requirement of three nominations. *Wirtz v. Hotel, Motel & Club Employees Union, Local 6, supra* 391 U.S. at 508, 88 S.Ct. at 1753. In both sub-districts the violation "may have affected the outcome."

After the 1973 election in District 22, the International constitution of the UMWA was amended to limit the maximum number of nominations that may be required by a district union to no more than one-fifth of the local unions in the district. The facts presented in this case will not recur, and we are concerned only with remedying the violations that occurred in the 1973 election. The offices filled in that election carried four-year terms. Although we are reluctant to put the Union to the expense of another election under the Secretary's supervision only one year before the next regularly scheduled election, that

is the action directed by the LMRDA and by the Supreme Court's opinion in *Wirtz v. Local 153, GBBA, supra.*

The judgment is affirmed as to the order for a new election of International board member. Otherwise, the case is remanded with directions to enter a judgment ordering new elections under the Secretary's supervision for district president and secretary-treasurer and for district board member in each sub-district.