[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2010
JOHN LEY
CLERK

No. 09-12471
Non-Argument Calendar

_____

D. C. Docket No. 07-20839-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUILLERMO ALFONZO ZARABOZO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 10, 2010)

Before BLACK, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Guillermo Alfonso Zarabozo appeals his sixteen felony convictions: one count of conspiracy to commit violence against maritime navigation, one count of seizing a ship, one count of performing violence likely to endanger the safe navigation of a ship, four counts of first degree murder within the maritime jurisdiction of the United States, four counts of kidnaping within the maritime jurisdiction of the United States, one count of robbery, and four counts of using a firearm resulting in death.  On appeal, he challenges the district court's denial of two motions to suppress evidence, one involving evidence taken from his bedroom, the other involving evidence taken out of bags recovered from the life raft from which he was rescued at sea.  We address each claim in turn and affirm his convictions.

The Fourth Amendment of the Constitution provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  Denial of a motion to suppress evidence based on an allegedly unreasonable search and seizure is a mixed question of law and fact.  *United States v. Lindsey,* 482 F.3d 1285, 1290 (11th Cir. 2007).  We review the factual findings supporting the district court's ruling on a motion to suppress for clear error, with the record

viewed in the light most favorable to the prevailing party. *Id.* We review the

district court's application of law to those facts *de novo*. *Id.*

I.

Zarabozo first challenges the admission of evidence seized from his

bedroom pursuant to a warrant obtained based on probable cause discovered when

Zarabozo's mother allowed law enforcement to search the room.[1] "Under the

Fourth Amendment, searches and seizures 'inside a home without a warrant are

presumptively unreasonable.'" *United States v. Davis*, 313 F.3d 1300, 1302 (11th

Cir. 2002) (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380

(1980)). If a search warrant is based on probable cause discovered because of an

illegal search, generally the search warrant is tainted and the evidence obtained

pursuant thereto is inadmissible. *United States v. McGough*, 412 F.3d 1232, 1240

(11th Cir. 2005).

---

[1]Zarabozo attempts to appeal, for the first time in his reply brief, the admission of evidence extracted from his living room computer. Zarabozo's initial motion to suppress, filed in district court, challenged only the validity of Zarabozo's mother's consent to law enforcement's search of Zarabozo's bedroom. Although the motion briefly noted that Zarabozo's mother consented to the search of the living room computer, the motion did not contend that Zarabozo's mother lacked the authority to consent to the computer search. Zarabozo's initial appellate brief states the computer was located in his bedroom and makes arguments dealing solely with the validity of his mother's consent to search the bedroom. Zarabozo concedes in his reply brief that the computer was taken from the living room but contends that its contents should still have been suppressed. He then provides, for the first time, arguments regarding his mother's authority to consent to a computer search. We do not consider issues raised for the first time in a reply brief. *See United States v. Smith*, 416 F.3d 1350, 1352 n.1 (11th Cir. 2005).

When consent is given for a search, however, the search may be valid even without a warrant or probable cause. *United States v. Dunkley*, 911 F.2d 522, 525 (11th Cir. 1990). To validate a warrantless search, consent must be voluntarily given by a person with the authority to give it or by a person who reasonably appears to have that authority. *Id.* (citing *United States v. Matlock,* 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974); *Illinois v. Rodriguez,* 497 U.S. 177, 110 S. Ct. 2793 (1990)).

For Fourth Amendment purposes, a landlord generally lacks the necessary authority to consent to the search of her tenant's apartment. *United States v. Brazel*, 102 F.3d 1120, 1148 (11th Cir. 1997). A third party may give valid consent to search an area, however, if she "has mutual use of it, with joint access to or control of the area for most purposes." *Id*. The reasonableness of a search may be influenced by commonly shared social understandings of the authority that co-inhabitants exercise over each other's interests. *Georgia v. Randolph*, 547 U.S. 103, 111, 126 S. Ct. 1515, 1521 (2006). Even if the third party lacks actual authority to consent to the search, if an officer has an objectively reasonable, good-faith belief that the consent is valid, there is no Fourth Amendment violation. *Brazel*, 102 F.3d at 1148.

We conclude the district court did not err in ruling the evidence taken from Zarabozo's bedroom was admissible, because Zarabozo's mother had apparent authority to consent to the search of his room that led FBI agents to the probable cause they used to obtain a warrant. Zarabozo's mother told FBI agents she was the head of the house and that by living in her house, Zarabozo had agreed he would abide by her rules and let her be "in his business."

Zarabozo shared the bedroom with his thirteen-year-old stepsister. Zarabozo's mother told the FBI agents she often went into the room to clean and straighten it. He kept the door to the room ajar. His mother repeatedly entered and exited Zarabozo's bedroom, retrieving and replacing various items, during her interview with the FBI agents. Zarabozo's mother opened Zarabozo's mail and told FBI agents Zarabozo gave her the code to the lockbox for his gun, which he kept in his room. His mother made no mention that Zarabozo paid her $300 per month in rent. The district court found Zarabozo's mother's voluntarily showed the FBI agents into Zarabozo's room and opened the lockbox for them without being asked. All of these events made it appear that Zarabozo's mother exercised authority over Zarabozo's space and belongings.

Given this testimony, the district court did not err in finding the circumstances created an objectively reasonable, good-faith belief that Zarabozo's

mother had the authority to consent to the search of Zarabozo's bedroom.   Thus, the district court did not err in admitting into evidence items obtained by the resulting search warrant.

## II.

Zarabozo also challenges the district court's denial of his motion to suppress evidence recovered from the warrantless search of the backpacks taken from the life raft in which Zarabozo was discovered.  Exigent circumstances may justify a warrantless search where there is an indication that evidence will be destroyed if the search is delayed.  *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991).  The test is "whether the facts . . . would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *Id.* (quotations omitted).  We conclude the district court did not err in finding the facts in this case justified such a belief.[2]

When Zarabozo and his co-defendant, Archer, were rescued from the life raft, they reported the Joe Cool fishing boat had been hijacked, four people were shot and dumped overboard, and the attackers fled the scene when the boat ran out

---

[2]The district court gave several alternative bases for its ruling.  Having concluded exigent circumstances justified the search, however, we need not analyze the merits of the alternate grounds.  Neither are we confined to the facts the district court used to justify its ruling, as "we may affirm on any ground that finds support in the record." *United States v. Mejia*, 82 F.3d 1032, 1035 (11th Cir. 1996) (citing *Jaffke v. Dunham*, 352 U.S. 280, 280, 77 S. Ct. 307, 308 (1957)).

of gas. FBI agents were dispatched to the scene to investigate the attack and were aware they might need to conduct further search and rescue efforts.

FBI Agents found the Joe Cool fishing boat and began searching the areas on the boat that were exposed to the elements, based on exigent circumstances, while waiting for search warrants to explore the protected areas. The Joe Cool's life raft, used by Zarabozo and Archer after the attack, was completely unprotected from the elements. An FBI Agent and a photographer went to the life raft and discovered Zarabozo's two soaking wet bags. They collected the bags and eventually opened them and removed their contents, which included weapons, some receipts, and a cell phone the agent threw into a bag of rice to dry.

We conclude the district court did not err in finding these facts constituted exigent circumstances supporting the FBI agent's warrantless search of Zarabozo's bags. Zarabozo's bags had been exposed to massive amounts of sea water, and the district court found law enforcement had a reasonable fear that any electronic or paper evidence might be irrevocably damaged if left in that condition. Accordingly, the district court ruled it was reasonable for agents to search Zarabozo's bags to collect evidence in danger of immediate deterioration. We

7

conclude the court, therefore, committed no error in admitting into evidence the items found pursuant to that search.

**AFFIRMED.**